```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JOHN TROLAND,                    :
   Plaintiff,                    :
                                 :
      v.                         :   Civil No. 3:12CV822(AVC)
                                 :
STEVEN WHITEHEAD, ET AL.         :
   Defendants.                   :
```

### RULING ON THE DEFENDANT'S MOTION TO DISMISS

This is an action for damages in which the plaintiff, John Troland, alleges that the defendants, Steven Whitehead, Matthew Hutchings, Jonathan Pettigrew, and Murray Pendleton violated his constitutional rights and engaged in conduct that caused him to suffer emotional distress. The complaint is filed pursuant to 42 U.S.C. § 1983 and Connecticut common law tenets concerning emotional distress.

One of the defendants, Jonathan Pettigrew, has filed the within motion to dismiss pursuant to Fed. R. Civ. P. 12 (b) (6) on the grounds that that the complaint fails to state a claim upon which relief can be granted.

For the reasons that follow, the motion to dismiss is **DENIED**.

### FACTS

An examination of the complaint reveals the following allegations:

Troland resides in Waterford, Connecticut. Whitehead, Hutchings, Pettigrew, and Pendleton are police officers in the Waterford, Connecticut Police Department. The complaint alleges that with respect to all the relevant facts, the defendants acted jointly and in concert with each other.

In 2010, Hutchings investigated Troland for allegedly threatening the mother of his son, Ms. Lori M. Gilleo. Troland was in the process of ending a long-term relationship with Gilleo and had recently filed an action in Connecticut Superior Court to evict her from his residence. Troland alleges that in response to this action, Gilleo falsely accused him of threatening her. Hutchings investigated Gilleo's complaint and during the course of his investigation, became romantically involved with Gilleo.

In December of 2010 and January of 2011, Troland contacted Pendleton, the Waterford Chief of Police. Troland informed Pendleton that Hutchings had exhibited bias during the investigation and requested that Pendleton ensure a fair and impartial investigation. Pendleton, however, took no action.

On January 24, 2011 Hutchings and Whitehead prepared an affidavit in which they accused Troland of having stolen plants from a nursery. The affidavit partially relied upon statements made to Hutchings by Gilleo. Troland alleges that the affidavit was "maliciously and intentionally fabricated." A superior court

judge issued an arrest warrant that charged fifth degree larceny on the basis of the false allegations.

Pettigrew "urged Hutchings to make the arrest personally, even if it meant crossing into the city of New London to do so," and on February 2, 2011, Hutchings made the arrest pursuant to the warrant.

As a result of Troland's arrest, he was accused of violating probation in an unrelated matter. Troland appeared in Rockville Superior Court to defend the probation violation charge and in New London Superior court to defend the larceny charge. During the course of the prosecutions, Hutchings maintained his relationship with Gilleo.

Ultimately, the State's Attorneys in Rockville and New London realized that Troland was framed and falsely accused of the larceny charge. As a result, all pending charges against Troland were nolled. This action follows.

## **STANDARD**

The court must grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), if a plaintiff fails to establish a claim upon which relief may be granted.  Such a motion "assess[es] the legal feasibility of the complaint, [it does] not . . . assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 784 F.2d 774, 779 (2d Cir.

3

1984). When ruling on a motion to dismiss, the court must presume that the well-pleaded facts alleged in the complaint are true and draw all reasonable inferences from those facts in favor of the plaintiff. Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). The issue at this juncture is not whether the plaintiff will prevail but whether he should have the opportunity to prove his claim. See Conley v. Gibson, 355 U.S. 41, 45 (1957). In order to withstand a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Patene v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007). The Supreme Court has recognized that Twombly is not limited to antitrust cases and requires "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2007). In its review of a 12(b)(6) motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## DISCUSSION

### I.   Section 1983 Malicious Prosecution Claim

Pettigrew argues that "the complaint alleges nothing improper against Pettigrew," and thus a dismissal is warranted

4

pursuant to Fed. R. Civ. P. 12(b)(6). Troland responds by highlighting the relationship between the defendants, particularly Pettigrew and Hutchings, noting that they were "sufficiently close . . . to know of Hutchings' personal interest in the plaintiff . . .," and that Pettigrew "joined" Hutchings in "'arranging to make the arrest in a manner that would cause the plaintiff the greatest possible emotional distress.'" Troland further alleges that Pettigrew "urged" Hutchings to make the arrest.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted). "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person-*i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." Singer v. Fulton Cnty. Sherriff, 63 F.3d 110, 116 (2d Cir. 1995). "A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'" Id. The "seizure[] must have been "effected 'pursuant to legal process.'" Id. at 117 (quoting Heck v.

Humphrey, 512 U.S. 477, 484 (1994)). When the "legal process" is in the form of a warrant "the arrest itself may constitute the seizure . . . ." Id. at 117.

The court concludes that it is plausible that Troland's Fourth Amendment right against unreasonable seizure was violated. The fact that Troland was arrested is a deprivation of liberty consistent with the concept of seizure identified by the Second Circuit in Singer. Troland's allegation that Pettigrew and Hutchings, "participated personally in a surprise arrest of the plaintiff on the aforesaid warrant . . .," supports the conclusion that the arrest was effectuated pursuant to legal process. See Heck v. Humphrey, 512 U.S. 477, 484 (1994).

Under Connecticut law, for a plaintiff to prevail on a malicious prosecution claim, he must prove that: "(1) the defendants initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." Holman v. Cascio, 390 F. Supp. 2d 120, 122 (D. Conn. 2005). See also, Pizarro v. Kasperzyk, 596 F. Supp. 2d 314, 317 (D. Conn. 2009); Frey v. Maloney, 476 F. Supp. 2d 141, 147 (D. Conn. 2007); McHale v. W.B.S. Corp., 187 Conn. 444, 447 (1982).

With respect to the first element, a person is deemed to have initiated proceedings "if his direction or request, or pressure of any kind by him, was the determining factor in the officer's (or prosecutor's) decision to commence the prosecution. Fatone v. DeDomenico, 161 Conn. 576, 577 (1971); see also, Zenik v. O'Brien, 137 Conn. 592, 596 (1951). Individuals other than an arresting officer can be liable for a § 1983 action asserting malicious prosecution and false arrest. See Shattuck v. Town of Stratford, 233 F. Supp. 2d. 301, 313 (D. Conn. 2002) (finding that a town tax collector may be liable for § 1983 malicious prosecution and false arrest claims if plaintiffs could show that she had initiated or instigated the prosecution).

Here, Troland alleges that Pettigrew "urged" Hutchings to make the arrest. Pettigrew does not specifically respond, but instead simplifies Troland's argument by stating that "the complaint names Pettigrew because he encouraged another police officer to serve a warrant personally." Under the Fatone reasoning, the court finds it plausible that Pettigrew's conduct—whether urging or encouraging the arrest—could have been the "determining factor," in Hutchings' decision to arrest Troland. See Fatone, 161 Conn. 576, 577 (1971).

With respect to the second element, the Second Circuit has stated that "the majority of cases interpret Connecticut law so

7

that a nolle prosequi satisfies the 'favorable termination' element as long as the abandonment of the prosecution was not based on an arrangement with the defendant." Roberts v. Babkiewicz, 582 F.3d 418, 421 (2d Cir. 2009). "The mere allegation of a nolle in a complaint may be enough to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Holman v. Cascio, 390 F. Supp. 2d 120, 123 (D. Conn. 2005).

Troland alleges that the New London State's Attorney nolled the charges because it became clear that he had been "framed." There are no facts alleged in the complaint to suggest that the charges were dropped as part of an arrangement with the defendant. Accordingly, the court concludes that the second element of a malicious prosecution claim is satisfied.

With respect to the third element, "[p]robable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quotation omitted).

The complaint contains sufficient facts to allow the court to draw a reasonable inference that Pettigrew knew the affidavit prepared by Hutchings and Whitehead contained fabricated information, and was therefore, executed without probable cause.

With respect to the fourth element, "[m]alice may be inferred from lack of probable cause." Falls Church Grp., Ltd. V. Tyler, Cooper and Alcorn, LLP, 281 Conn. 84, 94 (2007). See also, Mulligan v. Rioux, 229 Conn. 716, 746 (1994) (recognizing that the "[w]ant of probable cause and malice, combined are essential. If the evidence supports the former, we need not consider the latter, since it may be inferred.") (quotations omitted).

Here, the court has determined that the "fabricated" affidavit used to support the warrant did not constitute probable cause.

Pettigrew's motion to dismiss with respect to the § 1983 claim is, therefore, denied.

**II.   Emotional Distress Claim**

Pettigrew does not specifically address the emotional distress argument in his motion to dismiss aside from his overarching thesis that the "complaint alleges nothing improper against Pettigrew." Troland responds that Pettigrew was with Hutchings and joined him in "arranging to make the arrest in a manner that would cause the plaintiff the greatest possible emotional distress."

Under Connecticut law, a cause of action for emotional distress can fall into two categories: intentional or negligent infliction of emotional distress.  Troland does not specifically

9

state which claim he is asserting against the defendants in the complaint. Thus, the court construes the complaint as asserting both claims.

To succeed on a claim for intentional infliction of emotional distress ("IIED") in Connecticut, a plaintiff must prove "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000); Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341, 348 (D. Conn. 2001).

To successfully prove a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must prove "(1) that defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) that plaintiff's distress was foreseeable; (3) that her emotional distress was severe enough that it might result in illness or bodily harm; and (4) that defendant's conduct was the cause of the plaintiff's distress." Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003).

At this stage of the proceedings, any ambiguity in the complaint must be resolved in favor of the pleader. In examining the totality of the circumstances, including the allegations

contained in the complaint and inferences flowing therefrom, the court concludes that Troland has sufficiently alleged a claim for intentional infliction of emotional distress, or in the alternative, negligent infliction of emotional distress.

It can be inferred that Pettigrew knew the affidavit prepared by Hutchings and Whitehead contained fabricated information but nonetheless "urged" Hutchings to make the arrest pursuant to the deficient warrant. Troland alleges that Hutchings and Pettigrew executed the arrest in "a manner that would cause the plaintiff the greatest possible emotional distress." "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000).

These reasons, taken together with the low burden that a plaintiff must overcome at the Fed. R. Civ. P. 12(b)(6) stage, weigh in favor of denying the motion to dismiss with respect to the emotional distress claims. Therefore, Pettigrew's motion to dismiss as to the emotional distress claims is **DENIED**.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is **DENIED.**

It is so ordered this 18th day of March 2013, at Hartford, Connecticut.

```
              /s/
    Alfred V. Covello,
    United States District Judge
```